SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
PAUL S. COWIE, Cal. Bar No. 250131
pcowie@sheppardmullin.com
BROOKE PURCELL, Cal. Bar No. 260058
bpurcell@sheppardmullin.com
ANDREA L. ISAACS, Cal. Bar No. 323788
aisaacs@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:   415.434.9100
Facsimile:   415.434.3947

Attorneys for Defendant
BENCHMARK ELECTRONICS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LUIS RASCON, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>BENCHMARK ELECTRONICS, IN.; and DOES 1 through 20, inclusive,<br><br>                Defendants. | Case No.<br><br>**DEFENDANT BENCHMARK ELECTRONICS, INC.'S NOTICE OF REMOVAL**<br><br>*[Removed from Ventura County Superior Court, Case No. 56-2019-00530947-CU-OE-VTA]*<br><br>Complaint Filed:     July 22, 2019 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF AND HIS ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that Defendant Benchmark Electronics, Inc. ("Benchmark") hereby removes the action *Luis Rascon v. Benchmark Electronics, Inc.*, pending in the Superior Court of California, County of Ventura, Case No. 56-2019-00530947-CU-OE-VTA, to the United States District Court for the Central District of California.  Removal is based on the Class Action Fairness Act ("CAFA").  This Court has original subject matter jurisdiction over Plaintiff Luis

Rascon's ("Plaintiff") lawsuit under 28 U.S.C. §§ 1332(d)(2), 1441, 1453, and 1446, because it is a proposed class action, minimal diversity exists, and the amount in controversy exceeds $5,000,000. Accordingly, removal is proper based on the following grounds:

## I.    STATEMENT OF JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

1.    On February 18, 2005, the Class Action Fairness Act ("CAFA") was enacted. In relevant part, CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

2.    This Court has jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) the defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity of citizenship between at least one class member and one defendant. Each of these conditions were satisfied at the time this action was initiated and now at the time of removal.

3.    CAFA's minimal diversity requirement is satisfied when: (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens, (2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen, or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. *See* 28 U.S.C. § 1332(d).

4.    As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

SMRH:4833-0851-5777.1

## II.   <u>CLAIMS AND PROCEDURAL HISTORY</u>

5.     On or about July 22, 2019 Plaintiff Luis Rascon filed a putative class action complaint against Defendant in the Superior Court of the State of California, County of Ventura, Case No. 56-2019-00530947-CU-OE-VTA (the "Complaint") on behalf of himself and on behalf of all other purportedly similarly situated non-exempt, hourly employees.  On September 10, 2019, Plaintiff served a copy of the Complaint, Summons, and Civil Case Cover Sheet on Defendant.  Attached hereto as Exhibits **A-C** are true and correct copies of the Complaint, Summons, and Civil Case Cover Sheet.

6.     On or about July 23, 2019, the Court issued a Notice of Case Assignment and Mandatory Appearance at a Case Management Conference on December 20, 2019.  On or about August 8, 2019, the Ventura County Superior Court issued a Minute Order deeming the case complex.  On or about August 9, 2019, the Court issued a Notice of Change of Track Assignment to Complex and scheduling a Case Management Conference on November 12, 2019.  Attached hereto as **Exhibits D-F** are true and correct copies of the Notice of Case Assignment, Minute Order, and Notice of Change of Track Assignment to Complex.

7.     On or about October 10, 2019, Benchmark filed its Answer to the Complaint in Ventura County Superior Court and served its Answer on Plaintiff that same day.  Attached hereto as **Exhibit G** is a true and correct copy of Benchmark's Answer to the Plaintiff's Complaint.

8.     On or about November 5, 2019, Plaintiff filed his Notice of Intent to Appear by Telephone for the Initial Scheduling Conference and served his Notice on Benchmark that same day.  Attached hereto as **Exhibit H** is a true and correct copy of Plaintiff's Notice.

9.     On or about November 7, 2019, the Parties filed a Joint Case Management Statement in Ventura County Superior Court.  Attached hereto as **Exhibit I** is a true and correct copy of the Parties' Joint Case Management Statement.

10.    On or about November 8, 2019, Plaintiff filed his Notice of Posting Jury Fees and served his Notice on Benchmark that same day.  Attached hereto as **Exhibit J** is a true and correct copy of Plaintiff's Notice.

11.    On or about November 12, 2019, the Court conducted "an Initial Case Management Conference and continued the Case Management Conference to January 13, 2020.  Attached hereto as **Exhibit K** is a true and correct copy of the Court's Order.

12.    On or about January 7, 2020, the Parties filed a Joint Case Management Statement in Ventura County Superior Court.  Attached hereto as **Exhibit L** is a true and correct copy of the Parties' Joint Case Management Statement.

13.    On or about January 13, 2020, the Court conducted a Case Management Conference and took the matter off calendar.  Attached hereto as **Exhibit M** is a true and correct copy of the Court's Order.

14.    Plaintiff's Complaint asserts claims for relief arising out of his employment with Benchmark, including: (1) failure to provide meal periods under Labor Code §§ 226.7 and 512; (2) failure to provide rest periods under Labor Code § 226.7; (3) failure to pay overtime wages under Labor Code §§ 510, 1194, and 1198; (4) failure to provide accurate itemized wage statements under Labor Code § 226; (5) failure to timely pay all wages due upon separation of employment under Labor Code §§ 201, 202, and 203; and (6) violation of Business and Professions Code §§ 17200, *et. seq.*

15.    Plaintiff's Complaint is styled as a putative class action under Code of Civil Procedure § 382.  Plaintiff seeks to represent a putative class of "[a]ll California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California within four years prior to the filing of this action to the date the class is certified" ("Putative Class").  (Complaint, ¶ 20.)  Within the Putative Class, Plaintiff also seeks to represent "[a]ll Class Members who separated their employment

with Defendants at any time within three years prior to the filing of this action to the date the class is certified" ("Waiting Time Subclass")" *Id.* ¶ 21. .

16.    A copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Superior Court of California for the County of Ventura. **Exhibits A-M** contain all "process, pleadings, and orders" served on Benchmark in accordance with 28 U.S.C. § 1446(a). No other proceedings have been held in this action.

## III.    <u>JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT IS SATISFIED</u>

17.    Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 551 (2014) (A notice of removal "need not contain evidentiary submissions."). Rather, "[a] defendant's notice of removal need include only a plausible allegation that the jurisdictional facts exists." *Id*. at 554. Evidence is required "***only*** when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* (emphasis added); *Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019) (courts may not remand where notice of removal plausibly alleges the basis for removal, without giving the defendant an opportunity to prove the jurisdictional requirements are satisfied).

18.    The United States Supreme Court in *Dart Cherokee* held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that "CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Id.* Following *Dart Cherokee*, the Ninth Circuit has directed the district courts to "interpret CAFA's provisions under section 1332 ***broadly in favor of removal***…" *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) (emphasis added); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively"). In *Bridewell-Sledge v. Blue Cross*, 798 F.3d

923 (9th Cir. 2015), the Ninth Circuit held that under *Dart Cherokee*, the district court erred "in its remand orders by applying a 'strong presumption against removal jurisdiction.'" *See also Moppin v. Los Robles Reg'l Med. Ctr.*, 2015 U.S. Dist. LEXIS 129574, at *4 (C.D. Cal. 2015) ("[N]o presumption against removal exists in cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court").

**A.     The Case Is a Proposed Class Action with a Putative Class of At Least 100 Members, and Defendants Are Not a State, State Official, or Government Entity**

19.     This action has been styled as a California class action under California Code of Civil Procedure § 382.   (Complaint, ¶ 6 ("This is a class action under California Code of Civil Procedure section 382.").)  Code of Civil Procedure § 382 is a state statute authorizing an action to be brought by one or more representative persons as a class action.

20.     28 U.S.C. § 1332(d)(5) excludes from CAFA jurisdiction cases in which "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; or…the number of members of all proposed plaintiff classes in the aggregate is less than 100."

21.     Benchmark is neither a state, state official, nor a government entity.

22.     Plaintiff's Complaint alleges that "the class is estimated to be greater than one hundred (100) individuals."  (Complaint, ¶ 25(a).)  On the basis of its own investigation, Benchmark determined there are more than 100 current and former non-exempt employees in California during the four-year period prior to the filing of the Complaint.   Therefore, Plaintiff's proposed class consists of at least 100 members now at the time of removal and at the institution of this civil action.

**B.     Minimum Diversity of Citizenship Exists Here**

23.     CAFA requires minimum diversity of citizenship, pursuant to 28 U.S.C. section 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

24. Plaintiff's Complaint alleges that he is a resident of California. (Complaint, ¶ 10.) Plaintiff's Complaint further alleges that the Putative Class consists of "[a]ll *California citizens* currently or formerly employed by Defendants as nonexempt employees in the State of California within four years prior to the filing of this action to the date the class is certified." *Id.*, at ¶ 20 (emphasis added).

25. Although no *evidence* of domicile is required at the notice of removal stage (*Dart Cherokee*, 135 S.Ct. at 554) "[p]roof of residence in a state is usually thought *prima facie* evidence of domicile." *Bradley Min. Co. v. Boice*, 194 F.2d 80, 84 (9th Cir. 1951); *see also Anderson v. Watt*, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary…."); *Barbosa v. Transp. Drivers, Inc.*, 2015 WL 9272828, at *2 (C.D. Cal. 2015) ("a person's residence is *prima facie* evidence of his or her place of domicile for purposes of diversity jurisdiction") (quoting *Bey v. SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1103, 1105 (D. Or. 2012)). Furthermore, "a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013). Regardless, allegation of plaintiff's citizenship is sufficient for removal. *Ehrman v. Cox Communs., Inc.*, 932 F.3d 1223 (9th Cir. 2019).

26. Further, where there are no allegations of citizenship of certain parties in the complaint, a removing party may introduce "objective facts" in support of removal that would tend to show the domicile or citizenship of a party in a particular state. *See Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986) ("the determination of an individual's

domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes").

27.    Here, the Complaint affirmatively discloses that Plaintiff was a resident of California at the time this case was filed.  (Complaint, ¶ 10.)  Accordingly, Plaintiff is now at the time of this removal, and was at the institution of this civil action, a citizen of California for purposes of determining diversity.  *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).

28.    Because Plaintiff resides in California, worked in California for Benchmark, and because Plaintiff's proposed class is defined to include persons "currently or formerly" employed in the State of California by Benchmark, Benchmark may rely on the foregoing presumptions to establish that Plaintiff, and at least some of the putative class members, are now at the time of removal, and were at the institution of this civil action, domiciled in California and therefore citizens of California.

29.    <u>Benchmark's Citizenship</u>:  Here, Benchmark is, now at the time of this removal, and was at the institution of this civil action, a corporation incorporated under the laws of Texas.  As a corporation, Benchmark is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

30.    In *Hertz Corp. v. Friend*, 559 U.S. 77, 92-3 (2010), the Supreme Court clarified the definition of a corporation's "principal place of business" and concluded that the "'principal place of business' is best read as referring to the place where a

corporation's officers direct, control, and coordinate the corporation's activities." The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id.*, at 93.

31.    Under the foregoing standard Benchmark is a citizen of Arizona and Texas for purposes of removal.

32.    Benchmark is incorporated in the state of Texas, and maintains its corporate headquarters in Tempe, Arizona. Benchmark's corporate and executive officers are employed in Arizona. Benchmark's administrative functions (including that of legal, payroll, and human resources), are conducted in Tempe, Arizona. Tempe, Arizona is also where the actual center of direction, control and coordination for Benchmark takes place. This is well established by the following facts:  the corporate headquarters is the actual center of direction, control and coordination of all major human resources, payroll, legal and administrative functions; and the respective officers for these departments work in Tempe, Arizona and are responsible for developing policies and protocols for Benchmark. All of the facts alleged in this paragraph are true as of the time of this removal and were also true at the initiation of this civil action. Accordingly, Benchmark's principal place of business is, and was at the institution of this civil action, in the State of Arizona. *See* 28 U.S.C. § 1332(c)(1).

33.    In accordance with the foregoing, Benchmark is now at the time of removal, and was at the time of the institution of this civil action, a citizen of Texas and Arizona (and not a citizen of California), and Plaintiff and some of the putative class members are now at the time of removal, and were at the institution of this civil action, citizens of California (and not citizens of Texas or Arizona). Thus, the minimum diversity requirement under CAFA is satisfied.

34.    Doe Defendants:  Pursuant to 28 U.S.C. section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of

establishing removal jurisdiction under 28 U.S.C. section 1332.  *Fristoe v. Reynolds Metals Co*., 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).  *Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) (citizenship of fictitious defendants disregarded for removal).  Thus, the existence of Doe defendants 1 through 20 does not deprive this Court of jurisdiction.

35.    In accordance with the foregoing, Plaintiff is a citizen of the State of California, while Benchmark is a citizen of the States of Arizona (the principal place of business for Benchmark) and Texas (Benchmark's state of incorporation).  Thus, the minimum diversity requirement under CAFA is satisfied.

## C.    The Amount in Controversy Exceeds the $5,000,000 Requirement under CAFA

36.    Without making an admission of liability or damages with respect to any aspects of this case or the proper legal test(s) applicable to Plaintiff's allegations on behalf of herself and the putative class, the amount in controversy exceeds the jurisdictional minimum of this Court as detailed below.

37.    "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014).  Moreover, a defendant need not set forth evidence establishing the amount in its notice of removal.  *Id*.  A defendant is not obliged to "research, state, and prove the plaintiff's claims for damages."  *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994).  A defendant can establish the amount in controversy by "providing only a short and plain statement of the grounds for removal."  *Ehrman v. Cox Commc'ns, Inc*., 2019 WL 3720013 (9th Cir. Aug. 8, 2019); *see also Dart Cherokee*, 135 S. Ct. at 547 (holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and evidentiary submissions are required only if "the plaintiff contests, or the court questions, the

1  defendant's allegations").  Here, Benchmark alleges there is more than $5,000,000 in

2  controversy.

3       38.    CAFA authorizes the removal of class actions in which, among the other

4  factors mentioned above, the *aggregate* amount in controversy for all class members

5  exceeds five million dollars ($5,000,000.00).  *See* 28 U.S.C. § 1332(d).  By

6  demonstrating that the actual amount in controversy exceeds the threshold,

7  Benchmark does not concede the validity of Plaintiff's claims or the likelihood that

8  Plaintiff will recover anything.

9       39.    "In determining the amount in controversy, the Court accepts the

10  allegations contained in the complaint as true and assumes the jury will return a

11  verdict in the plaintiff's favor on every claim."  *Henry v. Cent. Freight Lines, Inc.*,

12  692 F. App'x 806, 807 (9th Cir. 2017).  "The amount in controversy is simply an

13  estimate of the total amount in dispute, not a prospective assessment of defendant's

14  liability."  *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see*

15  *also Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *3 (E.D. Cal. 2007)

16  ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's

17  complaint, not what a defendant will *actually* owe") (original emphasis); *see also*

18  *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010)

19  ("In deciding the amount in controversy, the Court looks to what the plaintiff has

20  alleged, not what the defendants will owe") (aff'd by 631 F.3d 1010 (9th Cir. 2011)).

21       40.    In the Ninth Circuit, the amount in controversy is determined "at the time

22  of removal."  *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (quoting

23  *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).  In *Chavez*

24  *v. JPMorgan Chase*, 888 F.3d 413, 417 (9th Cir. 2018), the Ninth Circuit held "[t]hat

25  the amount in controversy is assessed at the time of removal does not mean that the

26  mere futurity of certain classes of damages precludes them from being part of the

27  amount in controversy."  *Chavez*, 888 F.3d at 417 (original emphasis).  *Chavez* held

28  that "the amount in controversy is not limited to damages incurred prior to removal—

for example, it is not limited to wages plaintiff-employee would have earned before removal (as opposed to after removal).   Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Id.* at 414-15. These principles were affirmed again by the Ninth Circuit in *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018).

41.     Plaintiff's pleadings in this action fail to affirmatively disclose the amount in controversy or information from which Benchmark could readily ascertain the amount in controversy without independent investigation and analysis.  Plaintiff's Complaint was "indeterminate" as to whether federal jurisdiction under 28 U.S.C. § 1332(d) existed within the meaning of *Harris v. Bankers Life & Cas. Co*., 425 F.3d 689 (9th Cir. 2005) and *Roth v. CHA Hollywood Med. Ctr., L.P*., 720 F.3d 1121 (9th Cir. 2013).

42.     Benchmark provides the following calculations only to demonstrate that the amount in controversy in this case easily exceeds the jurisdictional amount in controversy under CAFA jurisdiction.   Benchmark makes no admission of any liability or damages with respect to any aspect of this case, or to the proper legal test to be applied to Plaintiff's claims.  Nor does Benchmark waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of her claims.

43.     Benchmark independently determined based on its own business records that Plaintiff's proposed Putative Class is comprised of approximately 1,192 current and former employees in California during the four-year period prior to the filing of the Complaint.

44.     Benchmark independently determined based on its own business records that Putative Class members worked a total of approximately 199,056 workweeks at an average hourly rate of $20.55 during the four-year period prior to the filing of the Complaint.

45.    Based on its own business records, Benchmark determined that Plaintiff's proposed Waiting Time Subclass is comprised of approximately 536 former Putative Class members during the three-year period prior to the filing of the Complaint.

Amount in Controversy for Rest Period Premiums

46.    Rest breaks under California law are required for non-exempt employees who work three and a half (3 ½) or more hours in a day.  Non-exempt employees are entitled to a rest period of ten (10) minutes for each four (4) hours, or major fraction thereof, that they work in a day.  *See* California Wage Orders, § 12.  California law requires employers to pay employees one additional hour of pay at the employee's regular rate of compensation for each workday that a rest period that is required to be provided is not provided.  Cal. Labor Code § 226.7.

47.    Plaintiff alleges that "Plaintiff and Class Members did not receive a ten (10) minute rest period for every four (4) hours or major fraction thereof worked…." (Complaint, ¶ 48.)   Plaintiff further alleges "Plaintiff and Class Members were required to work through their daily rest breaks and were not authorized to take their rest breaks."  (*Id.*)  Plaintiff claims that as a consequence, Benchmark "failed to pay Plaintiffs [*sic*] and Class Members rest break premiums for missed, late, and interrupted rest breaks under Labor Code section 226.7(b) and section 12 of the applicable IWC Wage Order."  *Id.*, at ¶ 50.

48.    In *Murphy v. Kenneth Cole Prods., Inc*., 40 Cal. 4th 1094 (2007), the California Supreme Court held that the premiums due under Cal. Labor Code § 226.7 are compensatory wages for statute of limitations purposes and therefore have a three year statute of limitations period.  *See* Cal. Code Civ. Proc. § 338(a).

49.    However Plaintiff asserts that Benchmark's alleged Labor Code violations "constitute unlawful and/or unfair business practices" under Business and Professions Code §§ 17200, *et seq.* and thus seeks restitution for Plaintiff and the Putative Class.  (Complaint, ¶¶ 85-86.)  California District Courts are split as to

Case No.
DEFENDANT BENCHMARK ELECTRONICS, INC.'S NOTICE OF REMOVAL

whether the four year statute of limitations under California Business & Professions Code § 17200 will extend the time to seek unpaid meal and rest period premiums. Cal. Bus. & Prof. Code § 17208; *compare Horton v. NeoStrata Co*., 2017 WL 2721977 (S.D. Cal. 2017) and *Dittmar v. Costco Wholesale Corp*., 2016 WL 3387464 (S.D. Cal. 2017) with *Parson v. Golden State FC, LLC*, 2016 WL 1734010 (N.D. Cal. 2016) and *Guerrero v. Halliburton Energy Servs. Inc*., 231 F. Supp. 3d 797 (E.D. Cal. 2017).

50.     Because the jurisdictional amount in controversy is determined based on what Plaintiff alleges, not what he will ultimately recover, a four year limitations period is appropriate for jurisdictional purposes.  Therefore, the relevant time period to calculate Plaintiffs' amount in controversy for alleged rest period violations is four years prior to the date Plaintiff filed her Complaint to the present, *i.e.* from July 22, 2015 to the present.  (*See* Complaint, ¶ 20 (defining the class period as reaching back four years).)

51.     Benchmark independently determined based on its own business records and on the allegations within Plaintiff's Complaint that the amount in controversy for rest period premium damages is at least $8,181,201 based on two missed rest breaks per week (199,056 workweeks x 2 missed rest periods per week x average $20.55 hourly rate.

52.     Therefore, the amount in controversy for Plaintiff's rest period premium damages claim alone also exceeds the jurisdictional minimum of $5,000,000.

Meal Periods:

53.     California law requires employers to pay employees one additional hour of pay at the employee's regular rate of compensation for each workday a meal period that is required to be provided is not provided.  Labor Code § 226.7.  California law requires provision of meal breaks to non-exempt employees who work more than five hours in a workday. Cal. Labor Code § 512.  Plaintiff alleges that Benchmark failed "to provide Plaintiff and the Class Members their meal periods or the payment of one

(1) additional hour of pay at Plaintiff's and Class Members' regular rate of pay when they did not receive a timely, uninterrupted meal period." (Complaint, ¶ 29.)

54.    Similar to Plaintiff's rest period allegations, Plaintiff alleges that Benchmark violated California Business & Professions Code §§ 17200 *et seq.* for the alleged failure to provide meal periods. (Complaint, ¶ 81(a).) As noted above, the limitations period for a claim under California Business & Professions Code § 17200 is four years, and the appropriate period to use for determining the amount in controversy. Cal. Bus. & Prof. Code § 17208.

55.    Therefore, Benchmark independently determined based on its own business records and on the allegations within Plaintiff's Complaint that the amount in controversy for meal period premium damages is at least $8,181,201 based on a conservative two missed meal periods per week (199,056 workweeks x 2 missed meal periods per week x average $20.55 hourly rate)

56.    Therefore, the amount in controversy for Plaintiff's meal period premium damages claim alone also exceeds the jurisdictional minimum of $5,000,000.

57.    Benchmark would be justified in using a 100% violation rate in computing the amount in controversy based on the nature of Plaintiff's allegations that Putative Class Members "often worked more than five (5) and ten (10) per day but did not always receive compliant meal periods for working more than five (5) and ten (10) hours per day. Indeed, they missed meal periods or took meal periods that were late, short, or interrupted." (Complaint, ¶ 41.)  *See Coleman*, 730 F. Supp. 2d at 1149 (C.D. Cal. 2010) ("courts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation"); *see also Sanchez v. Russell Sigler, Inc.*, 2015 U.S. Dist. LEXIS 55667, *16 (C.D. Cal. Apr. 28, 2015) ("Defendant's use of a 100% violation rate is proper in this case because Plaintiff's complaint alleges universal deprivation of meal and rest periods"); *Mortley v. Express Pipe & Supply Co.*, 2018 WL 708115, at *4 (C.D. Cal.

1   2018) (100% violation rate proper when allegations are "routine and systematic

2   violations" of California's meal and rest period laws); *see also Torres v. Secure*

3   *Communication Systems, Inc*, No. SACV 20-980 JVS(JDEx), Dkt. No. 28, (C.D. Cal.

4   July 20, 2020). Nonetheless, although Benchmark could have used a 100% violation

5   rate, instead it used only a 40% violation rate as the amount in controversy is met by

6   assuming two violations per week.

7   <u>Waiting Time Penalties</u>

8   58.   Under Cal. Labor Code § 203, "If an employer willfully fails to pay,

9   without abatement or reduction, in accordance with Sections 201 [or] 202…any

10   wages of an employee who is discharged or who quits, the wages of the employee

11   shall continue as a penalty from the due date thereof at the same rate until paid or until

12   an action therefor is commenced; but the wages shall not continue for more than 30

13   days."

14   59.   Plaintiff alleges that Benchmark "willfully failed to pay Plaintiff and the

15   Waiting Time Subclass all their earned wages upon termination, including, but not

16   limited to, proper overtime compensation, either at the time of discharge or within

17   seventy-two (72) hours of their leaving Defendants' employ." (Complaint, ¶ 73.)

18   Thus, Plaintiff alleges that Benchmark "owe[s] Plaintiff and Waiting Time Class

19   Members regular daily wages for each day they were not paid, at their regular rates of

20   pay up to a thirty (30) day maximum…." *Id.*, at ¶ 76.

21   60.   The statute of limitations for Plaintiff's waiting time penalties claim is

22   three years. Labor Code § 203(b); *Pineda v. Bank of Am., N.A.*, 50 Cal.4th 1389,

23   1390 (2010). Based on the three year statute of limitations and the time frame

24   alleged by Plaintiff, there are approximately 536 alleged members of the Waiting

25   Time Subclass, whose employment terminated in the relevant time frame alleged by

26   Plaintiff, between July 22, 2016 and the present.

27   61.   Therefore, Benchmark independently determined based on its own

28   business records and on the allegations contained within Plaintiff's Complaint that

Plaintiff alleged an amount in controversy for waiting time penalties damages (exclusive of interest) of approximately $2,567,654 (536 alleged Waiting Time Subclass members x $159.68 per day [average hourly rate = $19.96 hourly rate x 8 hours] x 30 days).

Wage Statement Penalties

62.    Labor Code § 226(e) provides for penalties in the amount $50 for each initial alleged wage statement violation to an employee, and $100 for each subsequent violation, up to a maximum $4,000.  Plaintiff alleges that Benchmark "knowingly and intentionally failed to comply with Labor Code section 226(a) on wage statements that it provided to Plaintiff and Class Members." (Complaint, ¶ 66.)  Plaintiff further alleges Benchmark "failed to correctly state the gross and net wages earned and all applicable hourly rates in effect (including proper overtime rates)." *Id.*

63.    The statute of limitations for Plaintiff's waiting statement penalties claim is one year.  Cal. Code Civ. Proc. § 340(a).  Based on the one year statute of limitations and the time frame alleged by Plaintiff, there are approximately 878 alleged Putative class members were employed by Benchmark July 22, 2018 to the present.

64.    For purposes of removal, Benchmark justified in using a 100% violation rate in computing the amount in controversy based on the nature of Plaintiff's allegation that every Putative Class member received at least one late and/or missed meal and rest period without premium pay.  (Complaint, ¶¶ 40-44, 48-50.) Accordingly, it is reasonable to assume that Plaintiff has alleged that every wage statement for all employee would be noncompliant. *Mejia v. DHL Express (USA)*, 2015 WL 2452755, at *5 (C.D. Cal. May 21, 2015) ("if Defendant had a uniform policy of failing to provide rest periods, as discussed above, the wage statements that Defendant provided would necessarily have been inaccurate 100% of the time because each wage statement would have failed to include compensation for the missed rest break.").

65.    Therefore, Benchmark independently determined based on its own business records and on the allegations contained within Plaintiff's Complaint that Plaintiff alleged an amount in controversy for wage statement penalties damages of approximately $3,512,000 ($4,000 x 878 Putative Class members).

<u>Amount in Controversy for Plaintiff's Other Claims</u>

66.    In addition to the claims identified above, Plaintiff alleges that she and the Putative Class were not paid overtime wages in accordance with California law, and that they were not provided with timely and accurate wage statements in violation of Cal. Labor Code § 226.  (Complaint, ¶¶ 52-70.)

67.    Labor Code § 1194 states that an employee receiving less than the legal minimum wage or the legal overtime wage is entitled the recover the amount owed in a civil action.

68.    For these reasons, Plaintiff's claim for unpaid overtime wages further increases the amount in controversy beyond the jurisdictional minimum of $5,000,000.

<u>Amount in Controversy for Attorneys' Fees</u>

69.    Plaintiff also alleges an entitlement to attorneys' fees.  (*See* generally Complaint, Prayer for Relief.)  Under Ninth Circuit precedent, a plaintiff's claim for attorneys' fees must be included in the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").  In *Fritsch*, the Ninth Circuit held that future attorneys' fees that are claimed, but not accrued at the time of removal, must be considered in the amount in controversy.  *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 -796 (9th Cir. 2018).

70.    Courts may use a 25% benchmark of total recovery when estimating the attorneys' fees in controversy.  *Greene v. Harley-Davidson, Inc.*, No. 20-55281, fn. 4 (9th Cir. July 14, 2020); *Garibay v. Archstone Communities LLC*, 539 F. App'x 763,

Case No.

DEFENDANT BENCHMARK ELECTRONICS, INC.'S NOTICE OF REMOVAL

764 (9th Cir. 2013); *Rodriguez v. Cleansource, Inc*., 2014 WL 3818304, at \*4 (S.D. Cal. 2014); *Marshall v. G2 Secure Staff, LLC*, 2014 WL 3506608 (C.D. Cal. 2014); *Jasso v. Money Mart Exp., Inc*., 2012 WL 699465 (N.D. Cal. 2012); *Ramos v. Schenker, Inc*., 2018 WL 5779978, at \*3 (C.D. Cal. 2018); *Ramirez v. Benihana Nat'l Corp*., 2019 WL 131843, at \*2 (N.D. Cal. 2019); *see also Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"). Thus, an additional minimum amount of $5,610,514 must be included in the amount in controversy ([$8,181,201 alleged rest period premiums + $8,181,201 alleged meal period premiums + $2,567,654 alleged waiting time penalties + $3,512,000 alleged wage statement penalties] x 25% = $ 5,610,514).

71.     And the same amount for alleged attorneys' fees is in controversy using the "lodestar" method of fee computation.  *See Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"); *see also Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, at \*5 (S.D. Cal. 2013) ("California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent").

72.     For all of the forgoing reasons, Benchmark alleges that the amount placed in controversy by Plaintiff is significantly greater than the jurisdictional minimum of $5,000,000 required by CAFA, both at the time removal and at the institution of this civil action.  The amount in controversy requirement for CAFA is therefore satisfied.

**D.     No CAFA Exceptions Apply**

73.     CAFA contains a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)-(4).  However, none of these exceptions are applicable here.  The party resisting removal has the burden of

proving the existence of a CAFA exception.  *King v. Great Am. Chicken Corp.*, 903 F.3d 875, 878 (9th Cir. 2018).

74.     The first is a discretionary exception based on the number of putative class members found in the state where the action was filed.  *See* 28 U.S.C. § 1332(d)(3).  However, the exception only applies where the "primary defendants are citizens of the State in which the action was originally filed."  Here, the action was originally filed in California and, as noted above, Benchmark is not a citizen of California.  Thus, this exception does not apply.

75.     Similarly, 28 U.S.C. § 1332(d)(4) contains two further exceptions to CAFA's grant of jurisdiction, based on the number of putative class members in the state in which the action was filed.  However, these exceptions, too, only apply where all primary defendants, or at least one defendant, is a "citizen of the State in which the action was originally filed."  *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(II) and 1332(d)(4)(B).  Given that this action was originally filed in California, and Benchmark is not a California citizen, these exceptions also do not apply.

## V.     <u>TIMELINESS OF REMOVAL</u>

76.     Under 28 U.S.C. § 1446(b), there are "two thirty-day windows during which a case may be removed–during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'"  *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005).

77.     When a complaint is "indeterminate," a defendant is under no duty to investigate the facts showing the basis for removal, and the first 28 U.S.C. § 1446(b) thirty-day window does not begin to run.  *Id.*, at 692-695.  "[T]he ground for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to begin."  *Id.,* at 695; see also *Taylor v. Cox Communications California, LLC*, 2016 WL 2902459 at *4 (C.D. Cal. 2016)

1    (affirming that "materials outside the complaint do not start the thirty-day clock.").

2    This reasoning was more recently confirmed in *Roth v. CHA Hollywood Med. Ctr.,*

3    *L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013): "even if a defendant could have

4    discovered grounds for removability through investigation, it does not lose the right

5    to remove because it did not conduct such an investigation and then file a notice of

6    removal within thirty days of receiving the indeterminate document." *See also*

7    *Torres v. Secure Communication Systems, Inc*, No. SACV 20-980 JVS(JDEx), Dkt.

8    No. 28, (C.D. Cal. July 20, 2020).

9        78.    A complaint is "indeterminate" when "it is unclear from the complaint

10    whether the case is removable, *i.e.,* the [jurisdictional facts are] unstated or

11    ambiguous." *Harris*, 425 F.3d at 693.  Plaintiff's Complaint does not affirmatively

12    allege or otherwise state that the amount in controversy exceeds $5,000,000.

13    Further, it is not discernable from the face of the Complaint that more than

14    $5,000,000 was placed in controversy.  There is nothing in the Complaint setting

15    forth the amount of damages recoverable for the alleged legal violations, nor the

16    number of times the violations allegedly occurred.  (*See generally* Complaint.)

17    Rather, the Complaint simply demands damages and other remedies in an unstated

18    amount.  *Id.*, at Prayer For Relief.

19        79.    Under *Harris*, the Court must not "inquire into the subjective

20    knowledge of the defendant, an inquiry that could degenerate into a mini-trial

21    regarding who knew what and when.  Rather…the court [may] rely on the face of

22    the initial pleading and on the documents exchanged in the case by the parties to

23    determine when the defendant had notice of the grounds for removal, requiring that

24    those grounds be apparent within the four corners of the initial pleading or

25    subsequent paper." *Harris*, 425 F.3d at 695 (*quoting Lovern v. GMC*, 121 F.3d 160,

26    162 (4th Cir. 1997).  Thus, the Complaint is "indeterminate" and its service does not

27    trigger the first 28 U.S.C. § 1446(b) thirty-day window to remove.  *See Roth*, 720

28    F.3d at 1125 (holding that complaint was "indeterminate" when "[i]t did not reveal

on its face that…there was sufficient amount in controversy to support jurisdiction under CAFA."); *see also Calkins v. Google, Inc*., 2013 U.S. Dist. LEXIS 97829, 2013 WL 3556042 at *2-3 (N.D. Cal. 2013) (holding that service of complaint did not trigger thirty-day window when amount in controversy was not affirmatively stated, even where defendant could have deduced the amount in controversy from documents in its possession).

80.     As of the date of this filing, the parties have not exchanged any subsequent papers determinative of the jurisdictional amount in controversy in this matter.  Where neither the initial pleading nor "other paper" discloses the grounds for removal, a defendant may remove at any time after it independently learns of the facts supporting removal jurisdiction. *Roth*, 720 F.3d at 1125.  Benchmark, based on its investigation and internal records, has since been able to determine that the amount in controversy based on the allegations in Plaintiff's Complaint, well exceeds the $5,000,000.00 threshold.  Thus, like in *Roth*, the facts alleged in this notice support that removal is both proper and timely.

## VI.   <u>JOINDER</u>

81.     Benchmark is not aware of any other defendant that exists and who has been named in the Complaint or who has been served with a summons and the Complaint.  The only defendants named in Plaintiff's Complaint are Benchmark and fictitiously named Doe defendants, whose presence is disregarded for purposes of removal.

## VII.   <u>VENUE</u>

82.     Venue is proper in this Court pursuant to 28 U.S.C. sections 84(c), and 1391.

## VIII.   <u>NOTICE TO PLAINTIFF AND STATE COURT</u>

83.     This Notice of Removal will be promptly served on Plaintiff and filed with the Superior Court of the State of California in and for the County of Ventura.

SMRH:4833-0851-5777.1         DEFENDANT BENCHMARK ELECTRONICS, INC.'S NOTICE OF REMOVAL

1    84.    In compliance with 28 U.S.C. section 1446(a), true and correct copies

2  of all "process, pleadings, and orders" from the state court action served on

3  Benchmark or filed by Benchmark are attached hereto as **Exhibits A through M**.

4    WHEREFORE, having provided notice as is required by law, the

5  above-entitled action is removed from the Superior Court for the County of Ventura

6  to this Court.

7  Dated:  July 24, 2020

8                                    Respectfully submitted,

9                                    SHEPPARD, MULLIN, RICHTER & HAMPTON
10                                   LLP

11

12                       By    _____
                                        /s/ *Andrea L. Isaacs*
13                                      PAUL S. COWIE
14                                      BROOKE S. PURCELL
                                        ANDREA L. ISAACS
15
16                                   Attorneys for Defendant
                                     BENCHMARK ELECTRONICS, INC.
17

18

19

20

21

22

23

24

25

26

27

28